**The People of the State of Illinois, Plaintiffs-Appellees, v. Wayne Royer, Defendant-Appellant.**

Gen. No. 68–57M.

Fifth District.

November 1, 1968.

Emerson Baetz, of Alton, for appellant.

Leon G. Scroggins, State's Attorney, of Edwardsville, and Lawrence T. Hartman, Assistant State's Attorney, for appellee.

SPIVEY, J.

Defendant appeals from a judgment of guilty following a bench trial in the Circuit Court of Madison County, Illinois. Defendant was charged with a violation of section 31–1 of the Criminal Code, chapter 38, section 31–1, Illinois Revised Statutes.

Defendant contends that his arrest was unauthorized in that the facts surrounding the occurrence did not comply with any of the requirements set out in section 107–2 of the Criminal Code, chapter 38, section 107–2, Illinois Revised Statutes.

The instant arrest was made without a warrant and without reasonable grounds to believe that a warrant for

the defendant's arrest had been issued in this State or in another jurisdiction.

We must now determine whether or not the People have proven that the arresting officer had reasonable grounds to believe that the defendant is committing or had committed an offense.

Everett Kelly, a police officer, testified that at about two-thirty a. m. on April 25, 1967, he saw the defendant driving his automobile in Granite City, Illinois, accompanied by two other persons, one of whom he recognized as a Fred Tanner; he started his red light and followed the defendant's car stating, "I wanted to find out why Fred Tanner was out with the adult"; followed the defendant's car to Black's Bakery; it drove into a backyard, asked the defendant for his identification or driver's license; the defendant said, "Why do you want my license, I'm on private property"; he told the defendant he was under arrest; he put his hands on the defendant and that he, the defendant, tried to pull away so he used necessary force; he knew Fred Tanner and wanted to ask him about his age; he had reference to the curfew law; and at the station house he again told defendant he was under arrest for contributing to the delinquency of a child.

Glen Wright, another Granite City police officer, testified that he was called for assistance and came to Officer Kelly's assistance; three persons were at the scene and one person said something about he could not be arrested on private property; the defendant jerked himself free pulling violently; we put the handcuffs on the defendant; defendant was cursing about his wallet and I was kicked in the leg; he shoved defendant away and he fell down; upon arrival at the station he saw defendant's chin bleeding; and the defendant was taken to the hospital.

The defendant Royer, testifying in his own behalf, stated he drove his car into the backyard of his mother-

46

in-law's home; a police car drove into the alley behind the yard; a policeman asked me to come down the alley; that I said I didn't have to; I did not have to give him my license; the officer tried to pull the license away from me while I was holding a tree; the policeman then went to his car; I was knocked down, hit and stomped on, kicked in the face; I presume I was taken to the station house but do not remember as I was unconscious; I was brought back to the station house from the hospital at which time I was told I was under arrest charged with something illegal; and I do not recall the officer having stated I was under arrest.

Helen Courtney, testifying on behalf of the defendant, stated that she was his mother-in-law; the controversy was in her backyard; she heard the policeman holler at the defendant; and the officer was wrestling with the defendant, dragged him to the police car and threw him in the back seat.

Marion Courtney, testifying on behalf of the defendant, said he saw Officer Kelly standing about thirty feet from the defendant shouting at the defendant to come to his car; the defendant approached the police officer but did not take the license out of his wallet; and another officer drove up and took him, Marion Courtney, into custody.

Officer Mank, who was present and one of the complainants, did not testify on behalf of the prosecution.

In discussing section 4 of division 6 of the prior Criminal Code, chapter 38, section 657, a similar statute to section 107–2 of the Criminal Code of 1961, the Supreme Court, in People v. Doody, 343 Ill 194, 175 NE 436, had this to say regarding the verbiage "reasonable ground for believing": "An officer making an arrest without a warrant and without *authority conferred by statute* to arrest without a warrant is a trespasser, . . . (citing cases)." Emphasis supplied.

The court went on further to say, "Whether or not the officer had reasonable ground for believing that the per-

47

son to be arrested had committed the offense is a mixed question of law and fact, circumstances to show it reasonable being the fact and their sufficiency when shown being a question of law. Kindred v. Stitt, 51 Ill 401."

■ To sustain the charge of resisting arrest under section 31-1 of the Criminal Code, the prosecution must show, among other things, that the defendant knowingly resisted the performance by one known to him to be a peace officer of an authorized act within his official capacity. (People v. Gasparas, 98 Ill App2d 391, 240 NE2d 716.)

We conclude that the prosecution has failed to prove the power to make the arrest was conferred by statute, viz., that Officer Kelly had reasonable grounds to believe that the defendant, Royer, was committing or had committed an offense.

The continuity of the events that transpired on the evening in question as disclosed by the stipulated Report of Proceedings is most difficult to follow. We believe it is fair to say that Officer Kelly's testimony clearly indicates that the events leading up to the altercation was motivated by his intention to check Fred Tanner for a possible violation of the curfew laws and not that of some reasonable belief the defendant was committing or had committed an offense.

The nature of the charge lodged against the defendant at the police station is not disclosed by the record. Neither was the nature of the offense that the defendant was suspect of having committed disclosed to the defendant until he had been returned from the hospital to the police station where he was informed that he was charged with contributing to the delinquency of a child.

The record likewise is absent any facts upon which Officer Kelly could reasonably conclude that the defendant was committing or had committed an offense and in particular that of contributing to the delinquency of a child.

■ Bare suspicion will not justify an officer in making an arrest. People v. Peak, 29 Ill2d 343, 194 NE2d 322.

The prosecution's sole argument for affirmance is based on section 7-7 of the Criminal Code, chapter 38, section 7-7, Ill Rev Stats.

■ It has been held that the comments of the joint committee to revise the Illinois Criminal Code may be considered in determining legislative intent. People v. Touhy, 31 Ill2d 236, 201 NE2d 425; People v. Miller, 55 Ill App2d 146, 204 NE2d 305, and People v. Young, 80 Ill App2d 479, 224 NE2d 465.

Article 7 of the Criminal Code, chapter 38, section 7-1 et seq., is a codification of the laws of justification for criminal acts established by legislative acts and court decisions as applied to use of force, exoneration, entrapment and necessity.

Section 7-14 of this Article designates the use of force as a justification to be an affirmative defense.

■ Section 7-7 of the Criminal Code is meant to be a limitation on the right to invoke the affirmative defense of justification provided in other provisions of Article 7 authorizing the use of force by an individual in resisting arrest by one known to be a peace officer or by a private person summoned and directed by a peace officer to make the arrest even if one believes the arrest to be unlawful and the arrest, in fact, is unlawful.

■ Appellee admits that the record does not disclose whether the arrest was lawful or unlawful and that this court may assume for the purpose of its decision that the arrest was, in fact, unlawful.

Appellee further states that the defendant knew the individual making the arrest was a police officer, therefore by virtue of section 7-7 of the Criminal Code the defendant was forbade from resisting the arrest. Further they say sections 31-7 and 7-7 of the Criminal Code should be read together. With this we cannot agree.

49

We deem it unnecessary to decide whether a defense of justification would be available to the defendant under the facts in this case in that the prosecution has failed to prove the act Officer Kelly was performing to be an authorized act.

In view of the foregoing the judgment and conviction in the Circuit Court of Madison County is reversed.

Reversed.

EBERSPACHER and GOLDENHERSH, JJ., concur.